UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
                                                                               :

DANDY GARCIA LAZARO (A.K.A.               :
DANIEL) and SAUL PAULA MIRANDA,        :   **MEMORANDUM DECISION AND**
individually and on behalf of others similarly     :   **ORDER**
situated                                                                :
                                                                              :   21-cv-5305 (BMC)
                                   Plaintiffs,      :

                           - against -                             :

BEST FISH MARKET CORP. (D/B/A BEST       :
FISH MARKET and JON CHAN NAM,          :

                                 Defendants.   :
-------------------------------------------------------------- X

**COGAN,** District Judge.

This case is before the Court on plaintiffs' motion for a default judgment pursuant to Fed. R. Civ. P. 55(b), the Clerk having duly noted defendants' default pursuant to Rule 55(a). For the reasons set forth below, the motion is granted with one adjustment.

## BACKGROUND

The second amended complaint and the affidavits in support of plaintiffs' motion allege that both plaintiffs worked as "food preparers" for defendant Best Fish Market Corp.

Plaintiff Garcia Lazaro was employed from about January 2020 to about July 2021. His approximate hours were 9:00 a.m. to 7:30 p.m. on Mondays and Wednesdays; 10:00 a.m. to 7:30 p.m. on Thursdays; 8:00 a.m. to 5:00 p.m. on Fridays; 8:00 a.m. to 7:30 p.m. on Saturdays; and 9:00 a.m. to 6:00 p.m. on Sundays. That comes out to about 54 hours per week. Garcia Lazaro was always paid in cash at the rate of $15 per hour, although there were two weeks during his

employment for which he was not paid at all.  In addition, he worked 20 minutes beyond his shift each day, and was not paid anything for that.

To get his cash payments, Garcia Lazaro was required to sign a document that misrepresented the hours that he worked.  Best Fish did not post or provide wage notices, nor did it distribute an accurate statement of wages as required by law.  Best Fish gave him pay stubs, but as noted, those deliberately understated his hours.

Plaintiff Miranda was employed in the same capacity but for a much longer period, from about 2009 until July 2021.  From 2015 until March 2020, his hours were approximately 7:30 a.m. to 7:30 p.m., six days per week.  For the remainder of his employment, he worked approximately from 8 a.m. to either 5:00 p.m. or 7:00 p.m., Mondays through Fridays, and 8:00 a.m. until 5:00 p.m. or 6:30 p.m. on Saturdays.  These hours do not reflect about 90 minutes that Miranda worked every day beyond his shift.  And there was a week that he worked where he wasn't paid at all.

Miranda, like Garcia Lazaro, was paid in cash but on a straight weekly salary basis as follows:

| Dates | Weekly Salary |
|---|---|
| Jan. 2015 through Dec. 2016 | $650 |
| Jan. 2017 through Dec. 2018 | $750 |
| Jan. 2019 through Dec. 2019 | $800 |
| Jan. 2020 through March 2020 | $820 |
| April 2020 through July 2021 | $900 |

To receive his pay, Miranda also had to sign a document that understated his hours. And he concurs with Garcia Lazaro that he received none of the wage notices and postings required by law; his paystubs reflected the understated hours on the document he was compelled to sign.

2

Plaintiffs' complaint is brought under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and corresponding provisions of the New York Labor Law ("NYLL") §§ 190, 195 and 650 *et seq.* They seek the following categories of damages: unpaid overtime; liquidated damages; unpaid spread of hours premium; penalties for wage notice and wage statement violations; prejudgment interest; and attorneys' fees and costs.

## DISCUSSION

It is hornbook law that on a motion for default judgment, the well-pleaded allegations of the complaint pertaining to liability are accepted as true. See, e.g., Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992). In the instant case, the complaint's allegations are sufficient to establish liability.

It is equally well settled that on a motion for a default judgment, the default does not constitute an admission as to the damages claimed in the complaint. See Finkel v. Romanowicz, 577 F.3d 79, 83 n.6 (2d Cir. 2009). The burden is on the plaintiff to establish, by a reasonable certainty, an entitlement to the relief requested. See Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999); Greyhound Exhibitgroup, 973 F.2d at 158. To determine damages, the court may conduct an inquest, see Fed. R. Civ. P. 55(b)(2), or it may rely upon the affidavits and other documentary evidence provided by the plaintiff, obviating the need for a hearing on damages, see Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997).

There is no need for an inquest here. Plaintiffs' affidavits constitute adequate proof of damages. There is no point in having them appear in court to repeat their hours and terms of employment as set forth in their affidavits. The second amended complaint and affidavits also

3

contain sufficient allegations as to the individual defendant's management and control over the business and the setting of plaintiffs' rates of pay and payment terms.

Plaintiff's evidence and the allegations in the complaint demonstrate his entitlement to each of the following categories of damages:

Plaintiff Garcia Lazaro

| ELEMENT OF DAMAGES | AMOUNT |
|---|---|
| Unpaid overtime wages and overtime | $8400 |
| Spread-of-hours wages | 3600 |
| Liquidated damages | 12000 |
| Sub-total | 24000 |
| Prejudgment interest @9% (N.Y. CPLR § 5001(b)) | 1301.18 |
| Wage statement and time-of-hiring notice violations | 10000 |
| TOTAL | $35301.18 |

Plaintiff Miranda

| ELEMENT OF DAMAGES | AMOUNT |
|---|---|
| Unpaid wages and overtime wages | $364246.50 |
| Spread-of-hours wages | 31734 |
| Liquidated damages | 395980.50 |
| Sub-total | 791961 |
| Prejudgment interest @9% (N.Y. CPLR § 5001(b)) | 153517.04 |
| Wage statement and time-of-hiring notice violations | 10000 |
| TOTAL | $950478.04 |

In addition, plaintiffs seek recovery of attorneys' fees in the amount of $6713.50 for 19.50 hours of work. The 19.50 hours is a reasonable amount of time to obtain a default judgment. The claimed paralegal rate of $125 per hour for 5.1 hours is within the parameters in this district. The claimed rate for the junior partner with four years' experience, most of it in non-wage cases and some of it in a foreign, non-common law country (the junior partner did not

4

receive her LL.M. until 2019), of $350 per hour for 10.7 hours, is on the high end, but not so high that I will reduce it where defendants, by defaulting, have waived their right to object to it.

The only issue is the $450 per hour rate for 3.7 hours claimed by former senior partner Michael Faillace. Plaintiffs have touted his qualifications and experience and noted that he has received the $450 per hour rate, just about the top for wage litigation in this district, in other cases. What the fee application does not expressly disclose, however, is that he has been suspended from practice for two years by the Grievance Committee of the Southern District of New York on November 9, 2021, as a result of repeatedly taking fees from settlements in excess of the amounts awarded to him by court order (effectively stealing from his clients' recoveries); refusing to follow client directions as to the amounts they wanted to settle the case; and of misrepresenting facts relating to these practices to the Southern District Committee. That suspension was reciprocally recognized by the Grievance Committee of this Court on the same date.

Mr. Faillace moved to withdraw from this case on November 6, 2021, ceding Managing Member responsibility to his junior partner mentioned above. The motion disclosed that he expected to be suspended from practice and was therefore resigning from his eponymous firm. That firm has been reconstituted as "CSM Legal P.C.," the initials, at least in part, reflecting the name of his junior partner referenced above. This Court granted his motion to withdraw on November 7, 2021.

Mr. Faillace's last time entry for the case is on the same date he moved to withdraw, November 6, 2021, for .1 hours, and indeed it is for work drafting the motion to withdraw. All of the time he billed on this matter is thus prior to formal imposition of his suspension.

Nevertheless, although a review of the docket reflects his correct expectation on November 6, 2021 that he would be suspended for some unstated reason, it is nowhere mentioned in the motion for default judgment that he has been suspended nor the cause. The closest the motion comes is to state in a footnote: "No funds will be distributed to Mr. Faillace unless an application is made to the Court on his behalf, and an order is entered to that effect." But it doesn't say why no funds will be distributed, apparently expecting that the motion to withdraw with its stated expectation of suspension is sufficient. It is not.

As plaintiffs note, the test for determining the reasonableness of a claimed hourly rate is to consider "what a reasonable, paying client would be willing to pay." Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 184 (2d Cir. 2008). The motion for a default judgment thus describes Mr. Faillace's prior work as Employment Counsel for IBM; his adjunct teaching at two law schools; his "national renown[]" as a speaker and writer on employment law; and the principal publications he has authored. All of this is properly recited in an effort to justify Mr. Faillace's $450 per hour rate.

But the omission of the findings by the Southern District Grievance Committee makes these disclosures misleading. Few "reasonable, paying clients" are going to retain an attorney who is going to be suspended for, among other things, stealing settlements from clients. Nor can the fact that his conduct had not been publicly disclosed when he worked on this case excuse the non-disclosure; just like anyone else making an investment (here, plaintiffs invest their causes of action with their attorneys), the hypothetical client posited by cases like Arbor Hill must be viewed as having all material information.

When viewed in that light, this Court will not allow any recovery as a result of Mr. Faillace's time spent on this case. In doing that, the Court does not intend to cast any aspersions

on Mr. Faillace's former junior partner as Managing Member of the successor firm. Rather, the Court is reaching this result because in the area of wage litigation, trust between lawyers and clients is particularly important – plaintiffs are generally unsophisticated; may not speak English; and, indeed, may have no legal status in the United States. They are an especially vulnerable group of clients. See Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199, 207 (2d Cir. 2015) ("the FLSA is a uniquely protective statute … enacted to prevent abuse by unscrupulous employers, and remedy the disparate bargaining power between employers and employees. … [T]he need for such employee protections [exists] even where the employees are represented by counsel … ") (citation omitted). Once a court has lost confidence in the integrity of a lawyer seeking court approval for compensation, as this Court has with regard to Mr. Faillace, it is difficult to conclude that any fee for that lawyer's effort should be awarded. That is why the representation from the successor firm that there will be no distribution to Mr. Faillace without a court order is insufficient; the reasonable value of his services that a fully informed client would pay is likely zero and certainly not $450 per hour.

Accordingly, plaintiffs are granted attorneys' fees in the amount of $5048.50. This reflects a reduction from the total fee claimed of $6713.50 to account for Mr. Faillace's 3.7 hours of time billed to this case at $450 per hour.

## CONCLUSION

Plaintiffs' motion for a default judgment [24] is therefore granted to the extent set forth above. The Clerk is directed to enter judgment as follows: (1) for plaintiff Garcia Lazaro in the amount of $35301.18 against both defendants, jointly and severally; (2) for plaintiff Miranda in the amount of $950478.04 against both defendants, jointly and severally; and (3) for both

7

plaintiffs in the amount of $5048.50 and $402 in attorneys' fees and costs, respectively, against both defendants, jointly and severally.

**SO ORDERED.**

Digitally signed by Brian M. Cogan

U.S.D.J.

Dated: Brooklyn, New York
January 29, 2022